UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:12CV-00155-JHM


CINDRA J. SUITER                                                    PLAINTIFF


VS.


LOGAN COUNTY, KENTUCKY
LOGAN COUNTY DETENTION CENTER
BILL JENKINS, LOGAN COUNTY JAILER
DEWAYNE REYNOLDS, DEPUTY JAILER                        DEFENDANTS


FINDINGS OF FACT, CONCLUSIONS OF LAW
AND RECOMMENDATION


This matter is before the Court on a motion by Defendants Logan County, Kentucky,

Logan County Jailer Bill Jenkins, and Deputy Jailer Dewayne Reynolds for summary judgment

(DN 81). Fully briefed, these matters are ripe for decision. For the reasons that follow, the

Undersigned respectfully recommends that Defendants' Motion for Summary Judgment be

GRANTED IN PART and DENIED IN PART.


STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no

genuine dispute as to any material fact and that the moving party is entitled to judgment as a

matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the

basis for its motion and identifying the portion of the record that demonstrates the absence of a

genuine issue of material fact. Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986). Once the

1

moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial.  <u>Anderson v. Liberty Lobby, Inc.,</u> 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts."  <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]"  Fed. R. Civ. P. 56(c)(1).  "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]."  <u>Anderson,</u> 477 U.S. at 252.  It is against this standard the Court reviews the following facts.

## FINDINGS OF FACT

Plaintiff, Cindra J. Suiter ("Suiter"), was hired as a deputy jailer at the Logan County Detention Center in 2004.  Suiter alleges that approximately four years later, she began receiving sexual advances from Defendant, Lieutenant[1] DeWayne Reynolds ("Reynolds") (DN 1).  Suiter's allegations against Reynolds include unconsented touching, comments about her

---

1 There is some dispute as to whether Reynolds should be labeled as "Deputy Jailer" or "Lieutenant."  Plaintiff's Complaint labels Reynolds as Deputy Jailer, but the Defendants' Motion to Dismiss alleges that Suiter incorrectly labeled him as such (DN 81, Defendants' Memorandum at Page 1).  Reynolds' testified in his deposition that when he began working at the jail, he took the position of Deputy Jailer but after seven or eight months was promoted to sergeant and two or three months after that promoted to lieutenant (DN 73, Reynolds' Deposition at Page 29).  Reynolds admitted that his current status at the jail is as lieutenant.  (DN 73, Reynolds' Deposition at Page 29).  Therefore, the Court will label Reynolds as "Lieutenant Reynolds."

physical appearance, requests for dates, and questions regarding Suiter's personal life, including sexual activities (DN 1). Suiter first reported the offensive conduct verbally to Captain Brandon Erby and Chief Deputy Richard Brooks on August 28, 2008. Captain Erby encouraged Suiter to meet with Defendant, Jailer Bill Jenkins ("Jenkins") to report the alleged incidents of sexual harassment. On September 2, 2008, Suiter met with Jenkins and reduced her complaint to writing (DN 81, Defendants' Attachment 4, Exhibit A-3, at Pages 3-4).

Shortly thereafter, Suiter filed a Complaint on September 23, 2008, in Logan County Circuit Court, alleging violations of the Kentucky Civil Rights Act, violations of Title VII of the Civil Rights Act of 1964, and a state law claim for intentional infliction of emotional distress (DN 91, Plaintiff's Attachment 1). Summary Judgment was granted in favor of the Defendants on March 3, 2011. Suiter appealed, and the Kentucky Court of Appeals entered an Order affirming in part, reversing in part, and remanding the decision (DN 91, Plaintiff's Attachment 2). The Logan Circuit case is still pending on remand.

After Suiter made her complaint to Jenkins, both Suiter and Reynolds remained employed at the detention center. Jenkins instructed that Suiter and Reynolds should have no intentional contact with one another at the jail. Suiter puts forth evidence that she remained in close proximity with Reynolds because they worked on the same side of the jail, and Reynolds continued to make inappropriate comments. Defendants counter that the facility layout and the job responsibilities of both Suiter and Reynolds made the instruction impossible to follow, which is why Jenkins instructed the contact should not be "intentional." The record indicates a later incident in the lounge area where Reynolds stared and whistled at Suiter and other incidents where Reynolds waited for Suiter at the booking desk and trapped Suiter in a locked hallway with him (DN 84, Holloway Deposition at Pages 33-34).

In response to Suiter's allegations, Jenkins immediately began an investigation of her sexual harassment claims. Jenkins interviewed employees and prisoners who had contact with both Suiter and Reynolds. Jenkins reduced his investigation to writing on January 9, 2009 (DN 81, Defendants' Attachment 3, Exhibit A-2). Many of the employees interviewed indicated that Suiter frequently initiated discussions of a sexual nature within the workplace, and began dating one of her co-workers, which created tension in the workplace. The report also indicates that Suiter was moved from shift to shift throughout the jail because of various complaints by her shift supervisors. Jenkins concluded in his report that he could not substantiate Suiter's claims because he could not determine whether Suiter or Reynolds was telling the truth and there were no witnesses to corroborate Suiter's claims. Suiter alleges that Jenkins' investigation mischaracterizes the story of Daisy Higgins ("Higgins"), a former jail employee who made a sexual harassment report about Reynolds, and alleges the report omits an additional report of sexual harassment against Reynolds. Jenkins has never reprimanded Reynolds for any claim of sexual harassment made against him by female jail employees (DN 74, Jenkins' Deposition, Attachment 3 at Pages 87-88).

The record indicates that Suiter was going through a difficult time with her personal life when the allegations of sexual harassment against Reynolds arose. In May of 2008, Suiter's daughter was indicted by a grand jury on Forgery Second Degree charges (DN 81, Defendants' Attachment 3, Exhibit A-2). Suiter became primary caretaker for her daughter's three children and was forced to pay thousands of dollars in restitution for bad checks her daughter wrote (DN 81, Defendants' Attachment 5, Exhibit G). Suiter has also been married five times, many of which she claims were mentally and physically abusive situations. Further, Suiter has a history of sexual harassment claims at prior jobs, and also alleges she was sexually abused by a

physician (DN 81, Defendants' Attachment 5, Exhibit G).

After making her report to Jenkins, and by referral from her attorney, Suiter began seeing Dr. Carrie Vos, Ph.D. for her emotional distress. Dr. Vos recommended that Suiter take a medical leave of absence from the jail because she had developed "serious depression and anxiety symptoms" (DN 91, Plaintiff's Attachment 10). Suiter was placed on medical leave without pay based on Dr. Vos's letter. On April 27, 2011, Dr. Vos authorized Suiter's return to work, but indicated, "her risk of reoccurrence is high if she were to return to the same environment in which she worked before" (DN 91, Plaintiff's Attachment 11).

Suiter never returned to work after her medical leave, despite Dr. Vos' release, and her attorney attempted to have the Logan County Detention Center transfer Suiter to a different location. The Logan County Fiscal Court Personnel Policies and Procedures provides, "[f]ailure to return to work at the expiration of approved leave shall be considered absence without leave and subject to the county's disciplinary policy. Employees who fail to return to work for *three consecutive days* without notifying the Department Director shall be considered to have abandoned the job" (DN 82, Defendants' Attachment 4, Exhibit F)(emphasis added). Jenkins held Suiter's job open for four weeks subsequent to the receipt of Dr. Vos' release letter. On June 6, 2011, Logan County Attorney, Joseph E. Ross ended Suiter's employment citing abandonment of her position (DN 91, Plaintiff's Attachment 7).

Suiter filed the Complaint initiating this action on September 13, 2012 (DN 1), alleging retaliation and hostile work environment under Title VII and intentional infliction of emotional distress. On December 20, 2012, the Court dismissed Claim II of Suiter's Complaint pursuant to the Americans with Disabilities Act (DN 14). The parties have concluded discovery. Defendants have filed a motion seeking summary judgment on Suiter's Complaint (DN 81).

CONCLUSIONS OF LAW

A. Title VII Claims

Plaintiff makes two claims pursuant to Title VII of the Civil Rights Act of 1964. She alleges both unlawful retaliation and hostile work environment discrimination claims against Defendants. Title VII provides that "it shall be an unlawful employment practice for an employer" to discriminate on the basis of race, color, religion, sex, or national origin. 42 U.S.C. §2000e-2(a). A person aggrieved by such discrimination may bring a civil action against the "employer." 42 U.S.C. §2000e-5(b). "Employer" is defined to mean "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such person." 42 U.S.C. §2000e(b). "Agent" is not defined by Title VII but has been interpreted as "an individual who 'serves in a supervisory position and exercises significant control over the plaintiff's hiring, firing or conditions of employment.'" Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 803 (6th Cir. 1994) (quoting Sauers v. Salt Lake Cnty., 1 F.3d 1122, 1125 (10th Cir. 1993)).

The Sixth Circuit has held that "despite the express use of the word 'agent' in the statute, Title VII does not create individual liability for individuals in supervisory positions." Akers v. Alvey, F.3d 491, 500 (6th Cir. 2003) (citing Wathen v. General Elec. Co., 115 F.3d 400, 405 (6th Cir. 1997)). Further, an examination of the statutory scheme and remedial provisions of Title VII indicates that Congress did not intend to provide individual employee/supervisor liability under Title VII. Wathen, 115 F.3d at 405. Therefore, "an individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII." Id.

1.  Individual Capacity Claims

Defendants argue that both of Suiter's Title VII claims against Lieutenant Reynolds in his individual capacity should fail because Reynolds was not Suiter's "employer" (DN 81, Defendants' Memorandum at Page 8). In response, Plaintiff makes no argument that Reynolds qualifies as an "employer" under Title VII and only states that Reynolds is a Lieutenant, with a higher rank than her, therefore giving him the responsibility to enforce jail policies (DN 91, Plaintiff's Response at Page 22). However, Plaintiff also states in her response, "it may be true that Lieutenant DeWayne Reynolds is not an employer" (DN 91, Plaintiff's Response at Page 26). These facts are insufficient to meet the definition of "employer" under Title VII, because evidence of Reynolds' higher rank, without more, does not indicate he has fifteen or more employees. Since the Sixth Circuit has interpreted Title VII to preclude suits against individuals, Reynolds cannot be held liable in his individual capacity. See Wathen, 115 F.3d at 406.

Plaintiff also seeks to hold Jailer Jenkins individually liable under Title VII. The facts in favor of Jenkins being considered an "employer" under Title VII are stronger than those for Reynolds, since Jenkins is the Chief Jailer. However, Plaintiff never alleges in her complaint that Jenkins is an "employer" within the meaning of Title VII. Defendant Jenkins is no doubt in a supervisor role as the Chief Jailer. See Maudlin v. Inside Out Inc., 2014 WL 1342883, at *3 (W.D. Ohio April 3, 2014) (finding that defendant was in a supervisor role as the president of the company). However, Plaintiff has not alleged sufficient facts that would elevate Defendant Jenkins to the level of an employer under Title VII. See id. Plaintiff has only stated, "it was the responsibility of Bill Jenkins . . . to provide [Plaintiff] with a safe work environment" (DN 91, Plaintiff's Response at Page 28). Further, the record indicates that although Jenkins had the

authority to move Suiter from different shifts in the jail, he ultimately did not make the decision to terminate her (DN 74, Jenkins' Deposition, Attachment 3 at Pages 88-89). Accordingly, the Defendants' motion for summary judgment on the Title VII retaliation and hostile environment claims against Reynolds and Jenkins should be granted in respect to their individual capacities.[2]

## 2. Official Capacity Claims

Plaintiff also brings Title VII claims against Jenkins and Reynolds in their official capacities. With respect to official capacity Title VII claims, Sixth Circuit case law has noted, "there is support for the proposition that a supervisor may be held liable in his/her official capacity upon a showing that he or she could be considered the 'alter-ego' of the employer." Little v. BP Exploration & Oil Co., 265 F.3d 357, 362 n.2 (6th Cir. 2001). The Sixth Circuit has not ruled on this particular issue of individual liability in an official capacity suit. Id. at 362 n.2. Some district courts within the Sixth Circuit have discussed this issue, but ultimately conclude that allowing an official capacity suit to continue against a Defendant is redundant when the employer is already a named defendant. See Maudlin, 2014 WL 1342883, at *4.

Even if this Court could find Jenkins and Reynolds liable in their official capacities, "[a] suit against a municipal officer in his or her official capacity is functionally equivalent to a suit against the municipal entity." Smith v. Ciesielski, 975 F. Supp. 2d 930, 937 (S.D. Ind. 2013) (citing Kentucky v. Graham, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)). Since an official capacity suit is "simply another way of pleading an action against an entity of which an officer is an agent," Id., the Court treats Plaintiff's claims under Title VII in all respects as

---

2 Since the Title VII claims against Jenkins fail in his individual capacity, the Defendants' claim of qualified official immunity for Jenkins is moot.

8

claims against Logan County. Therefore, the Defendants' motions for summary judgment for the Title VII claims against Defendants Reynolds and Jenkins should be granted with respect to their official capacities as well since the official capacity claims are functionally equivalent to a claim against Logan County.

### 3. Sovereign Immunity

There is no dispute that Logan County is considered an "employer" under Title VII. However, the Defendants claim that Logan County is entitled to sovereign immunity for Plaintiff's Title VII claims[3] (DN 81, Defendants' Memorandum at Page 5). The Eleventh Amendment bars "all suits, whether for injunctive, declaratory, or monetary relief, against the state and its departments by . . . its own citizens." Thiokol Corp. v. Dep't of Treasury, Revenue Div., 987 F.2d 376, 381 (6th Cir. 1993) (internal citations omitted). Eleventh Amendment immunity also extends to suits for monetary relief against state officials sued in their official capacities. Id.; see also Cady v. Arenac Cnty., 574 F.3d 334, 344 (6th Cir. 2009).

Sovereign immunity applies not only to the states themselves, but also to "state instrumentalities," or, in other words, to those government entities that act as "arm[s] of the State." S.J. v Hamilton Cnty., Ohio, 374 F.3d 416, 419 (6th Cir. 2004) (citing Mt. Healthy City School Dist. Bd. Of Educ. V. Doyle, 429 U.S. 274, 280, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). However, a county is not an arm of the state that is entitled to Eleventh Amendment immunity.

---

3 Defendants' motion for summary judgment argues, "Logan County, Kentucky cannot be held liable unless there is a direct causal link between a county policy or custom and the allegations" (DN 81, Defendants' Memorandum at Page 5). Defendants' reliance on this legal standard is misplaced because this standard deals with sovereign immunity for municipalities under §1983 claims. See Monell v. Dep't of Social Servs. of City of New York, 436 U.S. 658, 690-91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Plaintiff has not asserted a §1983 claim in her Complaint, therefore the standard is not applicable.

Alkire v. Irving, 330 F.3d 802, 811 (6th Cir. 2003) (citing Mt. Healthy, 429 U.S. at 280)).

Therefore, Logan County is not entitled to sovereign immunity for Suiter's Title VII claims.

Alternatively, sovereign immunity may not apply "where Congress abrogates sovereign immunity." VIBO Corp., Inc. v. Conway, 669 F.3d 675, 691 (6th Cir. 2012). Congress may properly abrogate a state's immunity in federal court if Congress both (1) makes its intention to abrogate unmistakably clear in the language of the statute and (2) acts pursuant to a valid exercise of power under §5, the Enforcement Clause of the Fourteenth Amendment. See Seminole Tribe of Florida v. Florida, 517 U.S. 44, 55, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996).

There is no dispute that in enacting the 1972 Amendments to Title VII to extend coverage to the states as employers, Congress exercised its power under §5 of the Fourteenth Amendment. Fitzpatrick v. Bayer, 427 U.S. 445, 453 n. 9, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976) (citing H.R. Rep.No. 92-238, p. 19 (1971) ("The bill amends section 701 of the Civil Rights Act of 1964 to include State and local governments, governmental agencies and political subdivisions within the definition of 'employer' under Title VII")). Because Title VII contains the requisite clear statement of congressional intent to abrogate and Congress has the power to abrogate, States and "arms of the state" are not entitled to sovereign immunity with respect to Title VII claims. Further, the Sixth Circuit has held, "Congress acted validly under its Fourteenth Amendment Enforcement Clause powers to abrogate state sovereign immunity to Title VII claims." Cox v. Shelby State Cmty Coll., 48 F. App'x 500, 504-05 (6th Cir. 2002) (citing Fitzpatrick v. Bitzer, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976)).

Because Logan County is not an arm of the state, and because sovereign immunity has been validly abrogated by Title VII, Suiter's claims against Logan County under this section are not barred by the Eleventh Amendment. See Westermeyer v. Dept. of Public Advocacy, No.

2:10-131, 2011 WL 830342, at *5 (E.D.Ky. Mar. 3, 2011). Therefore, the Defendants' request for summary judgment on the Title VII claims against Logan County should be denied as to the sovereign immunity issue. Accordingly, Plaintiff should be allowed to proceed with her claims under Title VII only against Logan County.

4. Unlawful Retaliation Claim

Defendants argue that summary judgment on Plaintiff's claim of unlawful retaliation under Title VII, 42 U.S.C. §2000e-2(a)(1) should be granted because Plaintiff failed to state a prima facie case. Specifically, Defendants claim that Suiter cannot meet the causation element (DN 81, Defendants' Memorandum at Pages 12-13). Suiter argues that she was terminated because Defendants refused to provide her with a safe working environment and she could not return to a work place which was damaging to her mental and emotional health (DN 91, Plaintiff's Response at Page 28).

Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to . . . compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §2000e-2(a)(1). To establish a prima facie case of retaliation under this statute, an employee must show that: (1) he or she engaged in protected activity; (2) the defendant knew of the exercise of the protected right; (3) an adverse employment action was subsequently taken against the employee; and (4) there was a causal connection between the protected activity and the adverse employment action. Stevens v. Saint Elizabeth Med. Ctr., Inc., 533 F. App'x 624, 630 (6th Cir. 2013) (citing Niswander v. Cincinnati Ins. Co., 529 F.3d 714, 720 (6th Cir. 2008)).

If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for the adverse employment action. Provenzano v. LCI Holdings Inc., 663 F.3d 806, 814 (6th Cir. 2011). The defendant meets this burden by "clearly set[ting] forth, through the introduction of admissible evidence," such reasons for the adverse employment action. Id. at 815. "If a defendant successfully produces such a legitimate reason, then the burden of production returns to the plaintiff to demonstrate by a preponderance of the evidence that the proffered reason was a mere pretext for discrimination." Fuhr v. Hazel Park School Dis.t, 710 F.3d 668, 675 (6th Cir. 2013).

Suiter has met the first three prongs of her retaliation claim: she complained about sexual harassment, Logan County knew of the complaint, and Logan County subsequently fired her. However, Suiter cannot establish the fourth prong. In order to establish a causal connection, "a plaintiff must proffer evidence sufficient to raise an inference that her protected activity was the likely reason for the adverse action." Dixon v. Gonzalez, 481 F.3d 324, 333 (6th Cir. 2007). "In determining whether there is a causal relationship between a plaintiff's protected activity and an allegedly retaliatory act, courts may consider whether the employer treated the plaintiff differently from similarly situated individuals and whether there is a temporal connection between the protected activity and the retaliatory action." Barrett v. Whirlpool Corp., 556 F.3d 502, 516-17 (6th Cir. 2009).

Plaintiff fails to put forth evidence that she was treated differently than similarly situated individuals. In fact, the evidence shows that Daisy Higgins, a similarly situated individual to Plaintiff, was also terminated after abandoning her job (DN 74, Jenkins' Deposition, Attachment 2 at Page 54; DN 91, Plaintiff's Response, Attachment 4 at Page 16). Further, no such temporal

proximity exists in this case. Suiter's sexual harassment complaint was made to Jenkins on September 2, 2008. However, Suiter's doctor didn't recommend a medical leave of absence until January 19, 2011. Suiter's doctor released her to return to work on April 27, 2011. Suiter never returned to work and never made contact with Jailer Jenkins to discuss her return to work. Jenkins held Suiter's job open for four weeks after Dr. Vos released her to return to work even though the Logan County Personnel Policies and Procedures only required he hold the job open for three days. Logan County Attorney, Joseph E. Ross, notified Suiter of her termination on June 6, 2011, for abandonment of her position, which is undeniably a legitimate reason. See Underhill v. Caudill, 186 F. Supp. 2d 736, 741 (W.D.Ky. 2006). Accordingly, over two and a half years passed between the filing of Suiter's sexual harassment complaint and her termination, foreclosing a finding of causality. See Clark Cnty. School Dist. v. Breeden, 532 U.S. 268, 273-74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (holding that a finding of causal connection was not warranted where, among other things, almost two years elapsed between the employee's participation in protected activity and the adverse employment decision).

Additionally even if Suiter established her prima facie case, Plaintiff has offered little evidence suggesting why the otherwise legitimate reason for her termination was a mere pretext to cover unlawful reasons. Suiter claims that she believed the Detention Center was working to place her in an employment position somewhere other than the jail, but admits that County Attorney Joe Ross never responded to her request for alternate employment (DN 91, Plaintiff's Attachment 13). Any discussions of placing Suiter in a position outside of the jail do not prove that her termination was a pretext to cover unlawful reasons. On the contrary, any evidence of relocation discussions would cast doubt upon Suiter's claims that Logan County took no action to provide her with a safe working environment. Further, Dr. Vos's letter of release to return to

work did indicate that Suiter's "risk of recurrence of these problems is high if she were to return to the same environment in which she worked before," but did not advise Logan County that Suiter would not be returning to work (DN 91, Plaintiff's Attachment 12).

Accordingly, the Court finds that Plaintiff has not stated a prima facie case of retaliation because no jury could reasonably conclude that Suiter's sexual harassment claim caused her termination two and a half years later, and therefore, summary judgment would be appropriate.

### 5. Hostile Work Environment Claim

Defendants also argue that summary judgment should be granted on Plaintiff's claim of hostile work environment based on sexual harassment under Title VII because of Suiter's insufficiency of evidence (DN 81, Defendants' Memorandum at Page 13).

Title VII prohibits the creation of a hostile work environment on the basis of an employee's gender. See Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 65-66, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). To establish a prima facie case of sexual harassment on the basis of a hostile work environment under Title VII, "a plaintiff must show that: (1) she is a member of a protected class, (2) she was subjected to unwelcome harassment, (3) the harassment was based on her sex, (4) the harassment created a hostile work environment, and that (5) the employer is vicariously liable." Clark v. UPS, 400 F.3d 341, 347 (6th Cir. 2005). Defendants admit that taking the facts in a light most favorable to Suiter allows Suiter to make a prima facie case with regard to the first four elements (DN 81, Defendants' Memorandum at Page 14). However, Defendants claim that Suiter fails at the fifth element, in attempting to prove that Logan County is vicariously liable for Reynolds' actions (DN 81, Defendants' Memorandum at Page 14).

14

As an initial matter, the Court must determine whether Suiter's hostile environment claim is based on harassment by a supervisor or a co-worker. "If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling work conditions." Vance v. Ball, 133 S.Ct. 2434, 2439 (2013). Different rules apply in cases in which the harasser is a "supervisor." If the harassing employee is a "supervisor" and the harassment "culminates in a tangible employment action, the employer is strictly liable." Id. However, if no tangible employment action is taken, "the employer may escape liability by establishing as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided." Id. (citing Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)).

Defendants argue that Reynolds was Suiter's co-worker because he did not have the capacity to take tangible employment actions against Suiter (DN 81, Defendants' Memorandum at Pages 10-11). Plaintiff's response put forth little evidence that Reynolds was Suiter's supervisor, only stating, "Reynolds is a lieutenant, and had a higher rank than Suiter . . . [and] had a responsibility to enforce jail policies" (DN 91, Plaintiff's Response at Page 22). Further, Plaintiff explicitly referred to Reynolds as "a fellow employee" in her response. Therefore, Plaintiff fails to demonstrate that Reynolds was Suiter's supervisor, and the Undersigned concludes that finds Reynolds and Suiter were co-workers.

Since Reynolds holds co-worker status, Logan County is liable only if it was negligent in controlling working conditions. To prove Logan County was negligent, the Plaintiff must show that "the employer knew or should have known of the harassment and failed to take immediate and appropriate corrective action." Hawkins v. Anheuser-Busch, Inc., 517 F.3d 321, 332 (6th

Cir. 2008). "Evidence that an employer did not monitor the workplace, failed to respond to complaints, failed to provide a system for registering complaints, or effectively discouraged complaints from being filed would be relevant" to the negligence determination. Vance, 133 S.Ct. at 2453. Further, the corrective action taken must be "reasonably calculated to end the harassment." Jackson v. Quanex, 191 F.3d 647, 663-64 (6th Cir. 1999).

The Sixth Circuit has identified steps that would "establish a base level of reasonably appropriate corrective action," including "promptly initiating an investigation to determine the factual basis of the complaint, speaking with the specific individuals identified by [the complainant], following up with [the complainant] regarding whether the harassment was continuing, and reporting the harassment to others in management." Waldo v. Consumers Energy Co., 726 F.3d 802, 814 (6th Cir. 2013) (quoting West v. Tyson Foods Inc., 374 F. App'x 624. 633 (6th Cir. 2010)).

Logan County was clearly put on notice of the sexual harassment when Suiter reported the activity to Jailer Jenkins on September 2, 2008. Thus, Logan County had an obligation to take remedial action after Suiter reported she had been sexually harassed by Reynolds. Logan County emphasizes that, after Plaintiff reported that Reynolds had sexually harassed her, Jenkins immediately called Logan County Attorney Tom Noe who instructed Jenkins begin an investigation of the claims. After four months of interviewing employees and inmates who had contact with both Reynolds and Suiter, Jenkins concluded that Suiter's claims could not be substantiated, and no further action was taken.

Although evidence of an investigation that ends with unsubstantiated claims may no

alone be considered remedial action,[4] there is also evidence in the record that, immediately after Suiter reported the sexual harassment, Jenkins instructed Suiter and Reynolds to have no intentional contact with one another.  By instructing Reynolds to have no intentional contact with Suiter, Jenkins acted in a reasonable manner.  See Mullins v. Goodyear Tire & Rubber Co., 291 F. App'x 744, 749 (6th Cir. 2008) (holding that employer instructing harasser to not bother victim and avoid spending unnecessary time in her work area acted in a reasonable manner).

Generally, absent evidence of continued sexual harassment after corrective action, the Court is unwilling to impose liability on an employer for failing to keep two employees separated.  See Martin v. Boeing-Oak Ridge Co., 244 F. Supp. 2d 863, 875 (E.D. Tenn. 2002). Here, the record shows that Reynolds and Suiter did have contact after the directive was given. Suiter submitted testimony that the harassing behavior continued and that Reynolds went out of his way to be near her. The record includes a number of additional incidents observed by employee Melissa Holloway such as Reynolds waiting for Suiter at the booking desk and Reynolds getting locked in a hallway outside of the nurse's station when Suiter was passing through.  Suiter presents evidence she filed another written complaint with Jenkins after an incident where Reynolds stared and whistled at her in the lounge area.  Reynolds admits to the incident, but claims it was unintentional.  Jenkins again failed to reprimand Reynolds for the unwanted intentional contact.

Assuming that the harassment proceeded as Suiter claims, as the Court must in taking the facts in a light most favorable to Suiter, a jury might find Jenkins' instruction requiring no

---

4 Some circuits, such as the Ninth Circuit, have found that "[a]n employer whose sole action is to conclude that no harassment occurred cannot in any meaningful sense be said to have 'remedied' what happened.  Denial does not constitute a remedy.  Nor does the fact of investigation alone suffice; an investigation is principally a way to determine whether any remedy is needed and cannot substitute for a remedy itself."  Fuller v. City of Oakland, Cal., 47 F.3d 1522, 1529 (9th Cir. 1995).

intentional contact inadequate to remedy the sexual harassment, since Suiter reported additional incidents of harassment by Reynolds.  See West v. Tyson Foods, Inc., 374 F. App'x 624, 633 (6th 2010) (finding that employer's response of moving the plaintiff to a different location and watching her for a few days, while harassment continued, was insufficient).  Even though Jenkins' response to the original harassment report may have been reasonable, a jury could find it was not effective in ending the harassment.  Therefore, the jury could conclude that Logan County's corrective action was inadequate and emboldened Reynolds to persist in his discriminatory treatment.  Taking the evidence in the light most favorable to the non-moving party, the Court leaves this issue of employer liability for the jury to resolve.

## B. State Law Claim

Defendants move for summary judgment on Plaintiff's state law claim based on intentional infliction of emotional distress (IIED) (DN 81, Defendants' Memorandum at Pages 6-7, 15).  Defendants assert sovereign immunity defenses for Logan County and Jailer Jenkins and Lieutenant Reynolds in their official capacities and a qualified official immunity defense for Jailer Jenkins in his individual capacity.

To prevail on a claim of outrage, a plaintiff must prove four elements, "(1) the wrongdoer's conduct must be intentional or reckless; (2) the conduct must be outrageous and intolerable in that it offends against generally accepted standards of decency and morality; (3) there must be a causal connection between the wrongdoer's conduct and the emotional distress; and (4) the emotional distress must be severe."  Gilbert v. Barkes, 987 S.W.2d 772, 777 (Ky. 1999) (citations omitted).

Kentucky courts have "set a high threshold for outrage claims," Stringer v. Wal-Mart Stores, Inc., 151 S.W.3d 781, 791 (Ky. 2004) and in Kentucky, "a claim for the tort of outrage

requires the Plaintiff to prove conduct which is 'so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Humana of Ky., Inc. v. Seitz, 796 S.W.2d 1, 2-3 (Ky. 1990) (quoting Restatement (Second) of Torts §46 (1) cmt. D (1965)). "It is for the court to decide whether the conduct complained of can reasonably be regarded to be so extreme and outrageous as to permit recovery." Goebel v. Arnett, 259 S.W.3d 489, 493 (Ky. Ct. App. 2007) (citing Whittington v. Whittington, 766 S.W.2d 73 (Ky. Ct. App. 1989)).

### 1. Sovereign Immunity

Because this claim is premised on Kentucky law, state rules of immunity govern, even when in federal court. Wilson v. Carroll Cnty., No. 12-68-GFVT, 2014 WL 897077, at *11 (E.D. Ky. March 6, 2014). Sovereign Immunity is a concept from common law "that precludes the maintaining of any suit against the state unless the state has given its consent or otherwise waived its immunity." Yanero v. Davis, 65 S.W.3d 510, 527 (Ky. 2001). Governmental immunity is derived from sovereign immunity and applies to tort liability of governmental agencies. Jones v. Cross, 260 S.W.3d 343, 345 (Ky. 2008). It is well established that because a county is a political subdivision of the state, it is "cloaked" with sovereign or governmental immunity. Id. (citing Lexington-Fayette Urban Cnty. Gov't v. Smolcic, 142 S.W.3d 128 (Ky. 2004)). Whatever immunity is enjoyed by Kentucky counties will also shield a county detention center. Wilson, 2014 WL 897077, at *11(citing Webb v. Jessamine Cnty. Fiscal Court, 802 F.Supp.2d 870, 887 (E.D. Ky. 2011)).

Further, the absolute immunity from suit afforded to the county, as a political subdivision of the state, also extends to county officials sued in their representative or official capacities

when the state is the real party against whom relief is sought.  Yanero, 65 S.W.3d 510, 518 (Ky. 2001).  Therefore, the claims against Jailer Jenkins and Reynolds in their official capacities are treated as claims against Logan County, which are cloaked with sovereign immunity.

Plaintiff has not cited any state law which would abrogate Logan County's sovereign immunity concerning his state law claim.  Wilson, 2014 WL 897077, at *11 (citing Mellencamp v. Louisville/Jefferson Cnty. Metro Gov't, No. 3:07-CV-325-S, 2009 WL 1034216, at *6 (W.D. Ky. Apr. 16, 2009) (explaining that claims for intentional infliction of emotional distress cannot be brought against the county because of state immunity)).  Consequently, Suiter's state law claims of IIED against Logan County and Jailer Jenkins and Lieutenant Reynolds in their official capacities are barred by Kentucky law, and the Defendants' motion for summary judgment on these claims is granted.

### 2.  Jenkins' Individual Liability

Defendants also challenge Suiter's IIED claim against Jenkins in his individual capacity by asserting a qualified official immunity defense and, alternatively, asserting that Suiter failed to make a prima facie case.  Under Kentucky law, "Official immunity" is immunity from tort liability afforded to public officers and employees for acts performed in the exercise of their discretionary functions.  Yanero v. Davis, 65 S.W.3d 510, 521 (Ky. 2001).  It rests not on the status or title of the officer or employee, but on the function performed.  Salyer v. Patrick, 874 F.2d 374, 378 (6th Cir. 1989).  When sued in their individual capacities, public officers and employees enjoy only qualified official immunity, which affords protection from damages liability for good faith judgment calls made in a legally uncertain environment.  Yanero, 65 S.W.3d at 522.  Qualified immunity applies to the negligent performance by a public officer or employee of (1) discretionary acts or functions; (2) in good faith; and (3) within the scope of the

employee's authority.  Id.  In Rowan County v. Sloas, the Kentucky Supreme Court noted the distinction between discretionary acts and ministerial acts, holding:

> Discretionary acts or functions are "those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment . . ." We have also said that discretionary duties are those as necessarily require the exercise of reason in the adaptation of a means to an end, and discretion in determining how or whether the act shall be done or the course pursued.  Discretion in the manner of the performance of an act arises when the act may be performed in one of two or more ways, either of which would be lawful, and where it is left to the will or judgment of the performer to determine in which way it shall be performed.

201 S.W.3d 469, 477 (Ky. 2006) (citing Yanero, 65 S.W.3d at 522).  On the other hand, "an officer or employee is afforded no immunity from tort liability for the negligent performance of a ministerial act, i.e., one that requires only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts."  Yanero, 65 S.W.3d at 522.

Because "qualified official immunity applies only where the act performed by the official or employee is discretionary in nature," the Court must first classify "the particular acts or functions in question" as either discretionary or ministerial.  Haney v. Monsky, 311 S.W.3d 235, 240 (Ky. 2010).  Plaintiff does not clearly identify the deliberate act by Jenkins that caused her emotional distress, but based on her recitation of the facts, it was most likely that Jenkins failed to discipline Reynolds and remove him from the workplace.

While statutes or regulations can create mandatory duties for an official, the official's decisions on how to enforce regulations can involve the use of judgment and discretion.  See Carl v. Dixon, 2011 WL 919896, at *3 (Ky Ct. App. March 18, 2011) (holding that 501 KAR 3:110 created a mandatory duty for the Kenton County Jailer to create a prison classification

system, but enforcing the system was discretionary), Stratton v. Commonwealth, 182 S.W.3d 526, 521 (Ky. 2006) (holding that the investigation of allegations of abuse involves ministerial functions prescribed by statute such as who must be interviewed, but also involves discretionary acts of whether and how to pursue such allegations). Here, there is no clear statute or regulation identified by Suiter creating a ministerial duty for Jailer Jenkins to pursue sexual harassment claims.

The Kentucky Court of Appeals addressed the qualified official immunity issue when Suiter appealed from the Logan County Circuit Court's grant of summary judgment. In their opinion, the Kentucky Court of Appeals referenced KRS § 344.040 as creating a legal mandate for an employer to take corrective action to stop sexual harassment when he knew or should have known of such harassment (DN 91, Plaintiff's Attachment 8). However, KRS § 344.040[5] creates a cause of action for damages for a claim of gender discrimination under the Kentucky Civil Rights Act (KCRA). See Young v. Hammond, 139 S.W.3d 895, 914 (Ky. 2004). In her Complaint filed with this Court (DN 1), Suiter fails to bring any claim under the KCRA. Therefore, KRS § 344.040 may be instructive, but is not binding on the determination of whether Jenkins' actions, in the context of Suiter's IIED claim, were ministerial or discretionary.

Instead, this Court will look to the regulations in the Logan County Fiscal Court Personnel Policy and Procedures manual, which creates a remedial system for complaints of sexual harassment, to determine whether Jenkins' actions were discretionary. The Procedures require managerial and supervisory personnel to, "promptly investigat[e] complaints of

---

5 KRS § 344.040 states in relevant part: "It is unlawful for an employer: To fail or refuse to hire, or to discharge any individual or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's race, color, religion, national origin, sex, age forty (40) and over, because the person is a qualified individual with a disability, or because the individual is a smoker or nonsmoker. . ."

discrimination, harassment, and tak[e] corrective action to prevent prohibited conduct from reoccurring" (DN 91, Plaintiff's Attachment 9). Jenkins followed the mandatory procedure created here by promptly investigating Suiter's harassment claims, and then taking corrective action in directing that Reynolds have no intentional contact with Suiter. Jenkins' conclusion that Suiter's claims were not substantiated was a discretionary act, involving personal judgments, not merely obedience to the orders of others or execution of specific, defined acts.

Here, the Court finds Jenkins used his discretion and judgment in his investigation and in his corrective action based on his conclusion. Therefore, the burden shifts to Suiter to establish that Jenkins acted in bad faith. <u>Yanero,</u> 65 S.W. 3d at 523. The "bad faith" element has both objective and subjective components. <u>Id.</u> An official is not entitled to qualified official immunity if he took actions that he knew or reasonably should have known would violate the constitutional, statutory, or other clearly established right of the plaintiff. <u>Id.</u> This is the objective component. Bad faith can also be based on a willful or malicious intent by the public officer to harm the plaintiff. <u>Id.</u> This is the subjective component. "There must be some implication of self-interest, or a deliberate indifference, or sinister motive, rather than an honest mistake or oversight." <u>Sloas,</u> 201 S.W.3d at 485.

Plaintiff cannot meet this burden. Suiter points to Jenkins' investigative report as misleading and alleges that Jenkins attempted to intimidate Suiter into dropping her harassment claim by meeting with her. (DN 91, Plaintiff's Response at Page 25). Plaintiff also claims that Jenkins' report contained "personal character assassinations," not only of Suiter but of Daisy Higgins, who also made a prior sexual harassment complaint about Reynolds. However, the Court finds that these statements are unpersuasive. Plaintiff has failed to produce evidence that

Jenkins "willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive. . . ." Sloas, 201 S.W.3d at 481.

Alternatively, the Defendants argue that Plaintiff has not demonstrated any intentional or reckless conduct on behalf of Jenkins (DN 81, Defendants' Memorandum at Pages 15-16). Further, Defendants claim that Suiter fails to provide any evidence of "outrageous, intolerable, offensive" actions by Jenkins. As mentioned previously, the standard for reaching "outrageous and intolerable conduct" in IIED claims in Kentucky is a very high standard to satisfy. Stringer v. Wal-Mart, 151 S.W.3d 781, 791 (Ky. 2004). For example, Kentucky courts declined to find that a nurse who told a patient who had just delivered a stillborn baby to "shut up," or a citizen who erected a billboard in his yard declaring that his neighbor was a child molester, acted outrageously, intolerably, or "beyond all decency." Miller v. Reminger Co., L.P.A., 2012 WL 2050239, at *5 (W.D. Ky. June 6, 2012) (citing Brown v. Lexington-Fayette Urban Cnty. Gov't. Dep't. of Public Works, 2010 WL 1529410, at *5 (E.D. Ky. April 15, 2010) (internal citation omitted)). Similarly, a jury could find that Jenkins' conduct of allowing Reynolds to continue working at the jail after Suiter's sexual harassment allegations does not reach the high threshold of "outrageous and intolerable" required by Kentucky Law. Therefore, the Undersigned recommends granting summary judgment for Jailer Jenkins in his individual capacity.

### 3. Reynolds' Liability

Defendants admit that taking the facts in the light most favorable to Suiter, she can establish the first two elements of her IIED claim against Reynolds in his individual capacity (DN 81, Defendants' Memorandum at Page 16). Defendants claim that Suiter fails to establish the third element of causation because her emotional distress was due to stressors outside of the

workplace (DN 81, Defendants' Memorandum at Page 16). In response, Plaintiff claims that the sexual harassment by Reynolds caused her to suffer emotional and mental injury (DN 91, Plaintiff's Response at Page 29).

Defendants only challenge the third element of requisite causal connection between Reynold's outrageous behavior and Suiter's mental and emotional distress. In Kentucky, "intentional torts require proving proximate cause." <u>Ventas, Inc. v. Health Care Prop. Investors, Inc.</u>, 635 F. Supp. 2d 612, 624 (W.D. Ky. 2009). That is, the act must be "a substantial factor in bringing about the harm." <u>Bailey v. North Am. Refractories Co.</u>, 95 S.W.3d 868, 871 (Ky. Ct. App. 2001) (citing Restatement (Second) of Torts §431 (1965)). Proximate cause can be interrupted by a superseding cause, which is "an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another." <u>Briscoe v. Amazing Products, Inc.</u>, 23 S.W.3d 228, 229 (Ky. Ct. App. 2000). Superseding causes, however, absolve a defendant from liability only if they are "an independent force, not naturally arising out of or related to" the harmful condition. <u>Seelbach, Inc. v. Cadick</u>, 405 S.W.2d 745, 749 (Ky. 1966). The essence of a superseding cause is that it is "extraordinary and unforeseeable." <u>Williams v. Ky. Dept. of Educ.</u>, 113 S.W.3d 145, 151 (Ky. 2003) (quoting <u>House v. Kellerman</u>, 519 S.W.2d 380, 383 (Ky. 1974)).

In their motion, Defendants produce evidence from Dr. Shraberg's evaluation of Suiter's numerous life events causing stress and her history of traumatic happenings. For instance, Suiter has been married five times to men that have raped her, physically abused her and her daughter, emotionally abused her, and threatened her with a gun. Suiter also alleges sexual abuse at two of her prior jobs and alleges sexual abuse by a physician (DN 82, Defendant's Attachment 5, Exhibit G, at Pages 2-4). Further, during the time when Suiter's sexual harassment allegations

arose against Reynolds, her daughter was facing criminal charges and was sent to rehab. Suiter

was forced to become primary caretaker of her daughter's three children and make restitution for

thousands of dollars her daughter wrote in bad checks (DN 82, Defendant's Attachment 5,

Exhibit G). Defendants claim that these external stressors defeat a causal connection linking any

outrageous behavior by Reynolds to the depression and anxiety that Suiter suffered.

Plaintiff does not rebut the Defendants' evidence of external stressors in her life, but

instead, relies on Dr. Vos's opinion from March 9, 2009, stating:

> She presented with serious symptoms of depression and anxiety,
> which she reported had developed as a result of stressors at work. .
> . The stressors at work described by Ms. Suiter were harassment
> and sexual harassment including physical contact by a certain
> individual, lack of immediate effective response by her superiors
> when she told about the problems, continuing exposure to the
> presence of the perpetrator, fear of what he might still do to her,
> and being emotionally triggered by places of the work place and
> events at the workplace to remember and re-experience the sexual
> assaults and harassments.

(DN 91, Plaintiff's Attachment 12). Although Plaintiff fails to rebut the contemporaneous

stressors that Defendants identify as causes of her emotional distress, the Undersigned is not

persuaded the external stressors amount to a superseding cause.

Further, although Defendants do not address the fourth element of "severe emotional

distress," there is sufficient evidence to allow a jury to find that Suiter suffered distress that is

"substantially more than mere sorrow." See Benningfield v. Pettit Envtl., Inc., 183 S.W.3d 567,

572 (Ky. Ct. App. 2005). Since Dr. Vos diagnosed Suiter with "serious depression and anxiety"

and problems of "sleeplessness, nightmares, crying, low energy, times of nervous energy, lack of

motivation, concentration and memory problems, decreased appetite, hopelessness, escape

wishes, isolating irritability and nervousness," Suiter's distress could qualify as severe.

Having reviewed the record, the undersigned concludes that Suiter offered sufficient evidence to establish the elements of the tort of outrage, and the claim should be submitted to the jury. Accordingly, summary judgment for Defendants as to their IIED claim would be inappropriate at this time.

RECOMMENDATION

For the foregoing reasons, it is recommended that Defendants' Summary Judgment motion be **GRANTED** as to Count I for Defendants Reynolds and Jenkins as to the retaliation and hostile work environment claims and Logan County as to the retaliation claim; **DENIED** as to Count I for Logan County as to the hostile work environment claim; **GRANTED** as to Count III for Defendants Logan County and Jenkins; **DENIED** as to Count III for Reynolds.

<u>NOTICE</u>

Therefore, under the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C) and Fed.R.Civ.P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be timely filed or further appeal is waived. <u>Thomas v. Arn</u>, 728 F.2d 813 (6th Cir.), <u>aff'd</u>, 474 U.S. 140 (1984).

Copies:        Counsel