UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:12CV-00155-GNS-HBB

CINDRA J. SUITER                                                                                          PLAINTIFF

V.

LOGAN COUNTY, KENTUCKY;
LOGAN COUNTY DETENTION CENTER;
BILL JENKINS, LOGAN COUNTY JAILER; and
DEWAYNE REYNOLDS, DEPUTY JAILER                                                  DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the Report and Recommendation of the United States Magistrate Judge (DN 96) relating to Defendants' Motion for Summary Judgment (DN 81). The parties have filed objections, and this matter is ripe for a decision. For the reasons outlined below, the Court **ACCEPTS** and **ADOPTS** the Report and Recommendation of the United States Magistrate Judge in its entirety, and **OVERRULES** the objections of the parties.

**I. STATEMENT OF FACTS AND CLAIMS**

In 2004, Plaintiff Cindra J. Suiter ("Suiter") was hired as a deputy jailer at the Logan County Detention Center ("LCDC"). In approximately 2008, Defendant Lieutenant DeWayne Reynolds ("Reynolds") allegedly made unwanted sexually advances towards her including unconsented touching, comments about her physical appearance, requests for dates, and questions regarding her personal life, including sexual activities. (Compl. ¶¶ 11-12, DN 1).

On August 28, 2008, Suiter made her first verbal report of the offensive conduct to Captain Brandon Erby ("Erby") and Chief Deputy Richard Brooks, and Erby encouraged Suiter

1

to raise her complaints with Jailer Bill Jenkins ("Jenkins"). (Erby Dep. 10:5-11:16, Jan. 21, 2014, DN 77-1). On September 2, 2008, Suiter met with Jenkins and made a written complaint.[1] (Defs.' Mot. for Summ. J. Ex. A-3 at 3-4, DN 81-4; Jenkins Dep. 34:3-35:17, June 11, 2013, DN 74-1).

Following Suiter's report of the harassment, Jenkins instructed both Suiter and Reynolds to avoid intentional contact at work. (Jenkins Aff. ¶ 4, DN 81-2; Jenkins Dep. 38:13-39:14, DN 74-2). According to Suiter, however, she remained in close proximity to Reynolds because they worked on the same side of the jail, and Reynolds' harassment continued.[2] The record reflects an incident in a lounge area in which Reynolds stared and whistled at Suiter. (1 Suiter Dep. 51:3-6, Feb. 18, 2010, DN 71-3). In another incident, Reynolds waited for Suiter at the jail's booking desk and trapped Suiter in a locked hallway with him. (Holloway Dep. 33:25-34:11, Mar. 18, 2014, DN 84). One of Suiter's former co-workers, Melissa Holloway ("Holloway") testified that "anytime [Reynolds] got the chance to try to be around her just to intimidate her, I felt like he tried to do that." (Holloway Dep. 34:15-17).

During Jenkins' investigation, he interviewed employees and prisoners who interacted with Suiter and Reynolds. (Jenkins Aff. Ex. at 9-17, DN 81-3). The interviews reflected that Suiter frequently initiated conversations of a sexual nature and had been dating one of her co-workers. (Jenkins Aff. Ex. at 4-7, 11-12, 13, DN 81-3). Suiter had also been transferred to

---

[1] On September 23, 2008, Suiter filed suit in Logan Circuit Court, Kentucky, alleging violations of Title VII of the Civil Rights Act of 1964, the Kentucky Civil Rights Act, and the tort of intentional infliction of emotional distress ("IIED") arising from Reynolds' conduct. (Pl.'s Resp. to Mot. for Summ. J. Ex. 1 at 3-4, DN 91-1). The claims in that case were dismissed on summary judgment, but the Kentucky Court of Appeals affirmed in part, reversed in part, and remanded the case. *See Suiter v. Logan Cnty. Reg'l Detention Ctr.*, No. 2011-CA-000614-MR, 2013 WL 780390, at *4 (Ky. App. Mar. 1, 2013).

[2] As the Jenkins' affidavit reflects, it would have been impossible for Suiter and Reynolds to avoid all contact if they were working on the same shift and that Jenkins' directive was for Suiter and Reynolds to merely avoid intentional contact. (Jenkins Aff. ¶ 4, DN 81-2).

different shifts due to complaints from her supervisors. (Jenkins Aff. Ex. at 4-7, 11-12, 13, DN 81-3). Ultimately, Jenkins was unable to substantiate whether the sexual harassment actually occurred. (Jenkins Aff. ¶ 7; Jenkins Aff. Ex. at 17-20, DN 81-3).

Following the report of Reynolds' harassment, Suiter sought treatment from Dr. Corrie Vos, a licensed psychologist.[3] (Pl.'s Resp. to Mot. for Summ. J. Ex., DN 91-12). Dr. Vos opined that Suiter had serious depression and anxiety symptoms. (Pl.'s Resp. to Mot. for Summ. J. Ex., DN 91-12). Upon Dr. Vos's recommendation, Suiter requested and was granted a medical leave of absence without pay. (Pl.'s Resp. to Mot. for Summ. J. Ex., DN 91-10). On April 27, 2011, Dr. Voss released Suiter to return to work, but Suiter never returned. (Attach. to Defs.' Mot. for Summ. J. Ex. D, DN 82-2; Attach. to Defs.' Mot. for Summ. J. Ex. E, DN 82-3).

Under the LCDC's personnel policies, "[e]mployees who fail to return to work for three consecutive days without notifying the Department Director shall be considered to have abandoned the job and hall be removed from employment with the county." (Attach. to Defs.' Mot. for Summ. J. Ex. F, DN 82-4). Upon receipt of Dr. Voss' letter, Jenkins held Suiter's position open for four weeks, and on June 6, 2011, Suiter was terminated. (Pl.'s Resp. to Mot. for Summ. J. Ex., DN 91-7; Attach. to Defs.' Mot. for Summ. J. Ex. E, DN 82-3).

Suiter filed this lawsuit alleging violations of Title VII of the Civil Rights Act of 1984 ("Title VII"), the Americans with Disabilities Act, and the tort of intentional infliction of

---

[3] Contemporaneously with her report of sexual harassment, there were significant events going on in Suiter's personal life. Following her daughter's conviction for forgery, Suiter became the primary caregiver for three grandchildren and paid thousands of dollars in restitution for her daughter. (Jenkins Aff. Ex. at 17-18, DN 81-3). There is also evidence noting that Suiter had been married numerous times and had been the victim of physical and mental abuse. (Defs.' Attach. to Mot. for Summ. J. Ex. G at 2-3, DN 82-5; Jenkins Aff. Ex. at 2, DN 81-3). She has previously been a victim of sexual harassment at other jobs and alleged that she had been sexually abused by a physician. (Defs.' Attach. to Mot. for Summ. J. Ex. G at 3, DN 82-5; Jenkins Aff. Ex. at 2, DN 81-3).

emotional distress ("IIED").[4]  Following the completion of discovery, Defendants moved for summary judgment. (Defs.' Mot. for Summ. J., DN 81).  In the Report and Recommendation, the Magistrate Judge recommended granting summary judgment on the following claims: (i) the Title VII retaliation and hostile work environment claims against Reynolds and Jenkins; (ii) the Title VII retaliation claim against Logan County; and (iii) the IIED claim.  (Report & Recommendation 27, DN 96).  The Magistrate Judge also recommended denying summary judgment on the hostile work environment claim against Logan County, and the IIED claim against Reynolds. (Report & Recommendation 27).

Both parties have filed objections to the Report and Recommendation. (Defs.' Objection to Report & Recommendation, DN 97; Pl.'s Objection to Report & Recommendation, DN 98).  For the reasons outlined below, the Court adopts the Report and Recommendation in its entirety and overrules the parties' objections.

## II. JURISDICTION

This Court has subject-matter jurisdiction of claims arising under Title VII. *See* 42 U.S.C. § 2000e-5(f)(3).  The Court also has supplemental jurisdiction over Plaintiff's pendent state law claims. *See* 28 U.S.C. § 1367.

## III. STANDARD OF REVIEW

In general, this Court conducts a *de novo* review of the portions of a U.S. magistrate judge's report and recommendation to which a party objects. *See* 28 U.S.C. § 636(b)(1).  In conducting its review, this Court "may accept, reject, or modify, in whole or in party, the findings or recommendations [of] . . . the magistrate." *Id.*  As a sister court has noted:

---

[4] This Court previously dismissed Suiter's Americans with Disabilities Act claim. (Mem. Op. & Order 6-9, DN 14).

>Objections to a magistrate judge's report and recommendation are reviewed *de novo*. The Sixth Circuit Court of Appeals has stated that "[o]verly general objections do not satisfy the objection requirement." "The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." Poorly drafted objections, general objections, or objections that require a judge's interpretation are ineffective and insufficient to preserve the right of appeal.

*Dean v. Beckstrom*, No. 13-129-DLB-EBA, 2014 WL 5460830, at *2 (E.D. Ky. Oct. 27, 2014) (internal citations omitted) (citation omitted).

## IV. DISCUSSION

Both parties have filed objections. Each party's objections are addressed separately below.

### A. Plaintiff's Objections

In Plaintiff's objections, Suiter alleges errors relating to the recommended dismissals of: (i) the IIED claim; (ii) the retaliation claim; (iii) the individual capacity claim under Title VII asserted against Jenkins; and (iv) the official capacity claim against Jenkins. In raising those objections, Suiter provides scant citation to any legal authority and primarily relies upon her recitation of evidence in the record. Upon review, the Court overrules Plaintiff's objections.

#### 1. *Suiter failed to prove a* **prima facie** *case of retaliation or present evidence of pretext.*

First, Plaintiff argues that her retaliation claim should not be dismissed. While the Magistrate Judge found that Plaintiff had presented proof of three of the four element of a *prima facie* case, the Report recommended the dismissal of this claim because Suiter failed to establish a causal connection between any protected activity and a retaliatory action. (Report & Recommendation 12-13). In addition, the Magistrate Judge concluded that Suiter failed to offer proof of pretext. (Report & Recommendation 13-14).

After reviewing Suiter's objections and the record, the Court concludes that she failed to satisfy her burden of proving a *prima face* case. (Pl.'s Objections to Findings of Fact, Conclusions of Law, & Recommendations 2-4). As the Sixth Circuit has stated, "[i]n determining whether there is a causal relationship between a plaintiff's protected activity and an allegedly retaliatory act, courts may consider whether the employer treated the plaintiff differently from similarly situated individuals and whether there is a temporal connection between the protected activity and the retaliatory action." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 516-17 (6th Cir. 2009) (citing *Allen v. Mich. Dep't of Corr.*, 165 F.3d 405, 413 (6th Cir. 1999)). In her objections, Plaintiff fails to identify any evidence in the record of similarly situated persons, or of a causal connection between her report of Reynolds's conduct and her termination more than two and a half years later. As the Sixth Circuit has held, "temporal proximity alone will not support an inference of retaliatory discrimination when there is no other compelling evidence." *Arendale v. City of Memphis*, 519 F.3d 587, 606 (6th Cir. 2008) (internal quotation marks omitted) (quoting *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)). The period of two and a half years that passed between report and termination is too remote to establish any causal link. *See Underhill v. Caudill*, 186 F. Supp. 2d 736, 741 (W.D. Ky. 2001) (concluding that a period of four months is insufficient for temporal proximity).

Even if this Court were to assume that Suiter could meet her burden of proving a *prima facie* case and because Logan County met its burden, she has failed to demonstrate how the Magistrate Judge erred in concluding that she failed meet her ultimate burden to prove pretext. *See Davis v. Cintas Corp.*, 717 F.3d 476, 492 (6th Cir. 2013). Suiter failed to rebut the stated reason for her termination—that she abandoned her position by not returning to work after being released by her psychologist. As the Magistrate Judge noted, discussions of transferring Suiter to

another Logan County department was not evidence of pretext. Again, the sequence of events appears to be what Suiter relies upon to prove pretext, but temporal proximity alone is legally insufficient for Suiter to meet her ultimate burden to prove pretext. *See Thompson v. Ameritech Adver. Servs.*, 40 F. App'x 90, 93 (6th Cir. 2002) (citation omitted). Accordingly, the Magistrate Judge did err in recommending the dismissal of Suiter's retaliation claim, and her objections are overruled.

### 2. The IIED claim Against Jenkins was barred by qualified official immunity.

Suiter also objects to the dismissal of her IIED claim against Jenkins on the basis of qualified official immunity. (Pl.'s Objections to Report & Recommendation 4 (citation omitted)). Without citing to the record, Suiter maintains that Jenkins' actions towards her are evidence of bad faith, and his investigation report "is evidence of 'self-interest, or deliberate indifference, or sinister motive, rather than an honest mistake or oversight.'" (Pl.'s Objections to Report & Recommendation 4 (citation omitted)).

After reviewing the record, the Court agrees that qualified official immunity bars this claims against Jenkins. As the Magistrate Judge noted, "Plaintiff has failed to produce evidence that Jenkins 'willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive . . . .'" (Recommendation & Report 23-24 (quoting *Rowan Cnty. v. Sloas*, 201 S.W.3d 469, 481 (Ky. 2006)).

For these reasons, the Court concludes that Plaintiff's IIED claim against Jenkins is barred by qualified official immunity.[5]

---

[5] In her objection, however, Plaintiff does not object to the dismissal of the underlying claim of IIED but instead focuses solely on whether her claim was barred based upon qualified official immunity. Despite her failure to object, the Court has reviewed the Report and the record with respect to the IIED claim for clear error or manifest injustice. The Court concludes that

7

### 3. *Jenkins was not Suiter's employer under Title VII.*

In addition, Plaintiff asserts that Jenkins was her employer and should therefore be personally liable for the claims asserted in this action. (Pl.'s Objection to Report & Recommendation 5). In making that argument, she does not cite to any evidence in the record or any legal authority to support her objection.

Notwithstanding Suiter's argument, the record is wholly lacking of any evidence to support the proposition that Jenkins was her employer. This argument also is inconsistent with federal law. Under Title VII, the term "employer" is defined as:

> a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person, but such term does not include (1) the United States, a corporation wholly owned by the Government of the United States, an Indian tribe, or any department or agency of the District of Columbia subject by statute to procedures of the competitive service (as defined in section 2102 of Title 5), or (2) a bona fide private membership club (other than a labor organization) which is exempt from taxation under section 501(c) of Title 26, except that during the first year after March 24, 1972, persons having fewer than twenty-five employees (and their agents) shall not be considered employers.

42 U.S.C. § 2000e(b). Thus, as the Sixth Circuit has held, "an individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII." *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 405 (6th Cir. 1997). Because the Report correctly concluded that Jenkins was not an employer under Title VII, the Title VII claims asserted against Jenkins in his individually capacity will be dismissed.

---

summary judgment was warranted on this claim. *See Pujalt-Leon v. Holder*, 934 F. Supp. 2d 759, 763 (M.D. Pa. 2013) ("Uncontested portions of the report may be reviewed at a standard determined by the district court. At the very least, the court should review uncontested portions for clear error or manifest injustice." (internal citation omitted) (citation omitted)). Because dismissal of the underlying IIED claim has not been contested and was not clearly erroneous or manifestly unjust, that claim would be dismissed even if Jenkins was not protected by qualified official immunity.

### 4. *The official capacity claim against Jenkins is the same as the claims against Logan County.*

Finally, Plaintiff objects to the dismissal of the claims asserted against Jenkins in his official capacity without any citation to any evidence or legal authority to support her position. (Pl.'s Objection to Report & Recommendation 5). "A suit against a municipal officer in his or her official capacity is functionally equivalent to suit against the municipal entity." *Smith v. Ciesielski*, 975 F. Supp. 2d 930, 937 (S.D. Ind. 2013) (citing *Kentucky. v. Graham*, 473 U.S. 159, 166 (1985)). Because Logan County is a party to this action, Plaintiff's claims against Jenkins in his official capacity were duplicative of the claims against Logan County. The Magistrate Judge did not err in recommending the dismissal of this claim.

## B. Defendants' Objections

Defendants' objections relating to Suiter's IIED claim against Reynolds and her hostile work environment claim against Logan County. Upon review, the Court overrules Defendants' objections.

### 1. *Summary judgment is not warranted on the IIED claim asserted against Reynolds.*

Defendants argue that summary judgment should be granted on Suiter's IIED claim against Reynolds and incorporate by references the reasons why they believe the IIED claim should be dismissed.[6] (Defs.' Objection to Report & Recommendation 1-2). Whether the Court

---

[6] Incorporating portions of the prior motions, responses, and replies, however, are insufficient to meet the "specific written objections to the proposed findings and recommendations" as required by Fed. R. Civ. P. 72(b)(2). *Edwards v. Niagara Credit Solutions, Inc.*, 586 F. Supp. 2d 1346, 1348 (N.D. Ga. 2008), *aff'd on other grounds*, 584 F.3d 1350 (11th Cir. 2009) (internal quotation marks omitted) (quoting Fed. R. Civ. P. 72(b)(2)). *See also Maiguaulte v. C.W. Post of Long Island Univ.*, 659 F. Supp. 2d 367, 372 (E.D.N.Y. 2009) ("[W]hen a party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." (internal quotation marks omitted) (citation omitted)).

9

were to conduct a de novo review or apply the clear error standard, the Court concludes that summary judgment is not warranted on this claim.[7]

As the Magistrate Judge noted in the Report and Recommendation, Suiter has introduced proof that could convince the jury that she suffered emotional distress for which she could recover on her IIED claim. *See Benningfield v. Pettit Envtl., Inc.*, 183 S.W.3d 567, 572 (Ky. App. 2005) (quoting *Gilbert v. Barkes*, 987 S.W.2d 772, 777 (Ky. 1999)). Suiter proffered evidence from Dr. Vos that could be used to support this claim at trial. Because Defendants' objection is largely an attack on the credibility of Suiter as to this claim, Defendants' arguments are best left for trial and do not warrant summary judgment. *See Payne v. Novartis Pharm. Corp.*, 767 F.3d 526, 531 (6th Cir. 2014) ("'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge . . . .'" (internal quotation marks omitted) (quoting *Anderson v. Liberty Lobby, Inc.* 477 U.S. 472, 255 (1986))). Because there are genuine issues of fact with respect to this claim against Reynolds, the Court concludes that summary judgment is not appropriate on this claim.

> **2.** ***There is a genuine issue of material fact with respect to the hostile work environment claim against Logan County.***

Defendants' second objection relates to Plaintiff's hostile work environment claim against Logan County. In their objection, Defendants argue that Suiter failed to report the continuing harassment and that Defendants' response was sufficient. (Defs.' Objection to Report & Recommendation 2-5).

---

[7] As the Kentucky Supreme Court has held, "[c]itizens in our society are expected to withstand petty insults, unkind words and minor indignities. Such irritations are a part of normal, every day life and constitute no legal cause of action. It is only outrageous and intolerable conduct which is covered by this tort." *Kroger Co. v. Willgruber*, 920 S.W.2d 61, 65 (Ky. 1996). Despite this Court's skepticism that Suiter can prove Reynolds' conduct was outrageous, the Court will permit the claim to go forward, but depending on the proof at trial this claim may not survive a motion for directed verdict.

As the U.S. Supreme Court noted in *Vance v. Ball State University*, 133 S. Ct. 2434 (2013), "an employer will always be liable when its negligence to leads to the creation or continuation of a hostile work environment." *Id.* at 2452. The Court further explained:

> Assuming that a harasser is not a supervisor, a plaintiff could still prevail by showing that his or her employer was negligent in failing to prevent harassment from taking place. Evidence that an employer did not monitor the workplace, failed to respond to complaints, failed to provide a system for registering complaints, or effectively discouraged complaints from being filed would be relevant.

*Id.* at 2453. As the Sixth Circuit noted prior to the *Vance* decision, "a court must judge the appropriateness of a response by the frequency and severity of the alleged harassment. Generally, a response is adequate if it is reasonably calculated to end the harassment." *Jackson v. Quanex Corp.*, 191 F.3d 647, 663 (6th Cir. 1999) (internal citation omitted) (citation omitted).

In their objections, Defendants provide a narrative of how they believe the evidence reflects that they fulfilled their obligations in addressing Suiter's sexual harassment complaint. As the Magistrate Judge noted, however, there is sufficient evidence for this claim to reach a jury when the evidence is considered in the light most favor to Suiter. (Report & Recommendation 16-17). In particular, there are factual issues regarding the remedial measures implemented by Defendants that could support a factual finding that the remedial measures were inadequate. Despite the order directing Reynolds to refrain from having any intentional contact with Suiter, the record reflects testimony that contact continued. There is evidence indicating that the harassing behavior continued and that Reynolds intentionally initiated contact with her at work.

A third-party—Holloway —also appears to have corroborated Suiter's testimony. Holloway testified that she observed Reynolds waiting for Suiter at the booking desk and Reynolds getting locked in a hallway by the nurse's station when Suiter passed through. There is also evidence reflecting an incident in which Reynolds whistled at her. Thus, after Suiter filed a

written complaint about that incident, a jury could conclude Jenkins took insufficient remedial measures.

Based upon the evidence in the record there are factual issues as to the sufficiency of the remedial measures implemented, which preclude the entry of summary judgment on the hostile work environment claim. *See Jackson*, 191 F.3d at 665 ("[I]f a remedy 'is ineffectual, liability will attach . . . . [A]n employer's actions will not necessarily shield it from liability if harassment continues.'" (citation omitted)). Accordingly, Defendants' objection to the recommendation to deny summary judgment on the hostile work environment is overruled.

## V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED AND ADJUDCATED** that the Report and Recommendation of the United States Magistrate Judge (DN 96) is **ACCEPTED AND ADOPTED IN ITS ENTIRETY**, and the objections of the parties (DN 97, 98) are **OVERRULED**.

Greg N. Stivers, Judge
United States District Court

March 25, 2015

cc:  counsel of record